**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY BOUDWIN<br>936 Turner Ave.<br>Drexel Hill, PA 19026 | : | |
| Plaintiff, | : | CASE NO.: |
| v. | : | JUDGE |
| MERAKAY CHILDREN'S SERVICES<br>265 E. Lehigh Ave.<br>Philadelphia, PA 19125 | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

**COMPLAINT**

Jeffrey Boudwin ("Jeff" or "Plaintiff"), by and through his undersigned counsel, Marlo Pagano-Kelleher, Esq. and The Pagano Law Firm, LLC, hereby brings the following Complaint for monetary damages, reinstatement, injunctive relief, and a declaratory judgment against Defendant Merakay Children's Services ("Merakay" or "Defendant"), averring as follows:

**PRELIMINARY STATEMENT**

1. This is an action for disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act. Plaintiff, Jeffrey Boudwin, blind since the age of three, is a mental health professional who was employed by Defendant Merakey Children's Services as an Outpatient Therapist from May 2023 until his unlawful termination in March 2025. Despite Jeff's successful performance in his role, Defendant failed to provide reasonable accommodations for his blindness, required him to work in-office while permitting non-disabled employees to work remotely, refused to make mandatory training materials accessible, and

ultimately terminated him for purportedly failing to complete trainings that were inaccessible to him due to his disability. Left with no choice, when Jeff attempted to resign, during the termination call Defendant's representative stated "you can't resign you are fired," making clear that Defendant was taking adverse action against Jeff because of his disability and his requests for accommodation. Jeff seeks compensatory damages, back pay, front pay, injunctive and declaratory relief and all remedies this Honorable Court deems just and fair in excess of $75,000 for Defendant's violations of federal law.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction of this matter pursuant to 28 U.S.C.S. §1331.

3. This Court has personal jurisdiction over Merakey because it regularly conducts business in this Commonwealth.

4. Venue is proper in this District because the parties reside in this District and resided in this District when the events at issue took place.

## PARTIES

5. Plaintiff, Jeffrey Boudwin, is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 936 Turner Avenue., Drexel Hill, PA 19026.

6. Defendant Merakey Children's Services ("Merakey") is self-described as a nonprofit human services provider of developmental, behavioral health, and education services to over 40,000 individuals in 12 states across the country.

7. Upon information and belief, Merakey is formed under the laws of the Commonwealth of Pennsylvania with its principal location at 265 E. Lehigh Ave., Philadelphia, PA 19125.

## STATEMENT OF FACTS

8. Jeff is blind and has been since the age of three, when he lost his sight due to a brain tumor.

9. Jeff's blindness substantially limits the major life activity of seeing and constitutes a disability within the meaning of 42 USCS § 12102.

10. On May 8, 2023, Defendant hired Jeff as an Outpatient Therapist on a fee-for-service basis.

11. Jeff’s disability was open and obvious to Defendant after accepting the position and before beginning work.

12. Jeff’s job duties included counseling minor clients and providing them with therapy, following up with clients and their parents, writing and updating treatment plans, and taking progress notes after each session.

13. Jeff was paid thirty dollars ($30.00) per client and received no payment if a client canceled or did not show for an appointment.

14. During onboarding, Jeff informed Defendant that due to his disability, Defendant’s electronic record system, Avatar, was not accessible to him and that he would need to take paper notes.

15. Jeff also informed Defendant during onboarding that, due to his disability, he would need assistance with "Vouchers". Vouchers, which function similar to a time and attendance card, documents that a client appeared for a scheduled appointment, the date, and time of the appointment and is confirmation that the employee provided services to that client.

16. The Voucher is not a progress note.

17. The Voucher does not report on the nature and substance of the meeting.

18. The Voucher does not document or memorialize the discussions between the client and counselor.

19. The Voucher is in essence like a certification that the appoint occurred and that services were provided.

20. The employee then submits the completed Voucher to the employer as the basis for his/her pay. The employer presumedly relies upon the Voucher as proof of services rendered for billing and wage purposes.

21. Jeff had previously completed an internship with Defendant and was familiar with the accessibility limitations of Avatar based on that experience.

22. Defendant was aware that despite a screen-reader, Avatar remained inaccessible to Jeff.

23. When Jeff transitioned to working from home, his supervisor, Richard Amoako, approved an accommodation allowing Jeff to fill out and sign Vouchers at home.

24. Jeff, with the assistance of his parents did this successfully for his entire work from home arrangement. Jeff woudld pick the Vouchers up from Merakey and after each client serviced, he would fill them out, place them in a sealed envelope and with the help of either his parents or brother, would return the Vouchers to Merakey where they would be used for billing and wage purposes.

25. This accommodation allowed Jeff to perform his job duties successfully from home, capture appointments and submit his hours for wage related purposes.

26. While stating a client's name, there was no confidential or other identifiable information stored on the Vouchers.

27. Jeff worked under the supervision of Richard Amoako from approximately September 18, 2023, to July 25, 2024.

28. Jeff understood that the hours he worked would be captured as credits worked toward his licensure.

29. In any given month, Jeff could have up to 50 appointments scheduled.

30. Jeff was paid at a rate of $30.00 per hour.

31. In or about November 2024, Jeff was told that he was being placed on unpaid leave purportedly due to violations of company policy.

32. Jeff, for the first time, was told that signing Vouchers at home was a breach of company policy.

33. After approximately two months of unpaid leave and presumedly an investigation, in January 2025, Jeff was informed that no breach was found and he could return to work.

34. Jeff was also told that Richard Amoako would no longer be his case manager; rather Katrina McAfoos was taking over this role.

35. While no breach of company policy was found, Ms. McAfoos told Jeff that he had to take training courses and that he was no longer permitted to work from home.

36. Confused by the changes but wanting to keep his job and continue earning field credits, Jeff proposed a compromise: he would work from home three days a week, with existing clients using the previously approved voucher-signing accommodation, and come into the office the other two days.

37. This arrangement would have let Jeff keep seeing current clients who needed after-school sessions between 3:30 p.m. and 8 p.m. It would also have reduced his burdensome commute to the Merakay location, an appreciable distance from his home.

38. Notably, Jeff was not paid for office time when no clients were scheduled. Requiring him to be in the office without any assurance of billable work meant absorbing the cost of that time himself. The hybrid schedule he proposed would have eased that burden.

39. Jeff communicated this request to Katrina McAfoos and Frank Beatrice, who at all times relevant hereto were acting within the course and scope of their employment. Beatrice, upon information and belief, was responsible for setting accommodations at Merakey.

40. Beatrice, “as a compromise,” initially appeared willing to allow Jeff to come to the office two days per week.

41. However, McAfoos demanded that Jeff come to the office three days per week.

42. In addition, Merakey denied Jeff’s request to continue working from home with his existing clients.

43. Defendant informed Jeff that he would need to come to the office three days per week to receive help with documents and trainings.

44. Defendant indicated that Jeff might be given new clients if he complied with the requirement to come to the office three days per week, but was vague and non committal about this possibility.

45. Defendant suggested that any new clients assigned to Jeff would likely be younger children than those in which Jeff had been working with thus making it difficult for Jeff to perform due to the age and communication gap.

46. Jeff again attempted to negotiate with Merakey, offering that if he were required to come to the office, he be permitted to report to the location closest to his home. Because of his disability, the longer commute and the lack of any guaranteed pay made in-office work untenable for Jeff in a way it was not for employees without his limitations.

47. Defendant refused Jeff’s compromise.

48. Upon information and belief, non-disabled employees were permitted to work from home without similar restriction.

49. Moreover, the new demand for certain trainings was contrary to representations made to Jeff in the past not to worry about completing certain trainings.

50. Other staff members at Defendant's organization reinforced that certain trainings were not something Jeff needed to worry about.

51. It was only after the new director joined Defendant's organization and after Katrina McAfoos became Jeff's new manager that Defendant suddenly required Jeff to complete the trainings.

52. To further complicate matter, Defendant did not provide Jeff with a specific deadline for completing these trainings.

53. The trainings were not accessible to Jeff due to his blindness.

54. Jeff could not complete the trainings independently.

55. While Defendant initially represented that it would help Jeff complete the trainings, Defendant ultimately refused to provide the necessary institutional support.

56. For example, despite allowing it in the past, Defendant no longer wanted Jeff's parents helping him with work-related tasks.

57. Moreover, Defendant did not provide Jeff with accessible training materials or institutional support to complete the trainings.

58. Prior to the issues surrounding accommodations and trainings, Jeff had no negative performance reviews or write-ups.

59. Jeff was never placed on a performance improvement plan.

60. On or about March 31, 2025, already knowing the answer, McAfoos called Jeff to inquire about his progress on the trainings.

61. During the phone call, McAfoos told Jeff that he was terminated.

62. Defendant's stated reason for termination was a purported failure to complete the very trainings they never gave him a timeline for nor the accommodations necessary to successfully complete.

63. Jeff was never given a prior warning that his job was in jeopardy.

64. Jeff was not given an opportunity to respond to concerns about the trainings before being terminated.

65. Defendant did not conduct meaningful meetings with Jeff to discuss accommodation options.

66. Defendant made decisions about Jeff's accommodations without his input.

67. When Jeff responded to Defendant's proposed accommodations, Defendant ignored his responses.

68. Defendant did not revisit or re-evaluate Jeff's accommodation needs when job duties or training requirements changed.

69. Defendant presented the requirement to come to the office three days per week as a take-it-or-leave-it proposition.

70. Jeff has been unemployed since his termination on March 31, 2025.

71. Including the period of leave, Jeff has been without pay for over eighteen months.

72. Jeff has applied for other employment but has not yet found a new position.

73. As a result of the termination, Jeff must restart the process of collecting hours required for professional licensure.

74. Jeff has experienced stress, anxiety, and humiliation as a result of Defendant's conduct and the termination.

75. Jeff has lost motivation regarding his career.

76. Jeff is concerned about the impact of his sudden departure on the clients he was treating.

77. On June 26, 2025, Jeff filed a complaint with the Equal Employment Opportunity Commission.

78. The parties participated in mediation however they could not resolve their differences.

## COUNT I
## DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF 42 USCS § 12112

79. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 78 as if fully set forth herein.

80. Plaintiff is a qualified individual with a disability.

81. Plaintiff is blind and has been since the age of three.

82. Plaintiff's blindness substantially limits the major life activity of seeing.

83. Plaintiff was able to perform the essential functions of his position as an Outpatient Therapist with reasonable accommodations.

84. Plaintiff successfully performed his job duties, including seeing clients, providing therapy, following up with clients and parents, writing and updating treatment plans, and taking progress notes.

85. Plaintiff received no negative performance reviews or write-ups prior to the events leading to his termination.

86. Defendant subjected Plaintiff to an adverse employment action.

87. Defendant terminated Plaintiff's employment on March 31, 2025.

88. The adverse employment action was motivated by Plaintiff's disability.

89. Defendant required Plaintiff to come to the office three days per week ostensibly to receive help with documents and trainings due to his blindness.

90. Non-disabled employees were permitted to work from home without any requirement to come to the office.

91. Defendant imposed training requirements that were inaccessible to Plaintiff due to his blindness.

92. Defendant failed to provide institutional support to enable Plaintiff to complete the trainings.

93. Defendant terminated Plaintiff for failing to complete trainings that were inaccessible to him.

94. Plaintiff was treated less favorably than similarly situated non-disabled employees.

95. Upon information and belief, non-disabled employees were permitted to work from home without restriction.

96. Upon information and belief, non-disabled employees did not face barriers to completing the training requirements because the trainings were accessible to them.

97. Upon information and belief, non-disabled employees were not required to come to the office three days per week to retain their positions.

98. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages including lost wages, emotional distress, humiliation, and damage to his professional reputation and career.

**COUNT II**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF** 42 USCS § 12112

99. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 98 as if fully set forth herein.

100. Plaintiff is a qualified individual with a disability.

101. Plaintiff is blind and has been since the age of three.

102. Plaintiff was able to perform the essential functions of his position as an Outpatient Therapist with reasonable accommodations.

103. Plaintiff's disability was obvious to Defendant such that Defendant knew or should have known at and after accepting the position and before beginning work.

104. Defendant was aware that Plaintiff was blind and that this disability affected his ability to use certain computer systems and complete certain tasks without accommodation.

105. Plaintiff requested reasonable accommodations.

106. Plaintiff requested the ability to continue signing and filling out Vouchers from home for clients serviced from his home.

107. Plaintiff requested accessible training materials or institutional support to complete required trainings.

108. The requested accommodations were reasonable and would have enabled Plaintiff to perform the essential functions of his job.

109. Plaintiff had previously worked from home successfully with a voucher-signing accommodation approved by his supervisor.

110. Upon information and belief, non-disabled employees were permitted to work from home, demonstrating that remote work was feasible for the position.

111. Providing accessible training materials or institutional support for trainings is a standard accommodation for employees with disabilities.

112. Such accommodations would have enabled Plaintiff to complete the required trainings and maintain his employment.

113. Defendant failed to provide the requested accommodations.

114. Defendant denied Plaintiff's request to continue working from home with his existing clients.

115. Defendant required Plaintiff to come to the office three days per week instead.

116. Defendant failed to provide institutional support to help Plaintiff complete the trainings.

117. Defendant did not demonstrate that providing the requested accommodations would impose an undue hardship to the company.

118. Defendant did not provide any evidence that the requested accommodations would cause significant difficulty or expense to the company.

119. As a direct and proximate result of Defendant’s failure to provide reasonable accommodations, Plaintiff has suffered damages including lost wages, emotional distress, and damage to his professional career.

## COUNT III
## FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF 42 USCS § 12112

120. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

121. Plaintiff is a qualified individual with a disability.

122. Plaintiff is blind and has been since the age of three.

123. Defendant knew of Plaintiff's disability.

124. Plaintiff disclosed his disability to Defendant, identified specific accommodation needs, and requested accommodations during onboarding.

125. Plaintiff requested the ability to continue signing and filling out Vouchers from home for clients serviced from his home.

126. Plaintiff requested accessible training materials or institutional support to complete required trainings.

127. Defendant failed to engage in a good-faith interactive process to identify and implement reasonable accommodations.

128. Defendant made decisions about Plaintiff's accommodations without Plaintiff's input.

129. When Frank Beatrice appeared willing to allow Plaintiff to come to the office two days per week, Katrina McAfoos overrode this decision without consulting Plaintiff.

130. Upon information and belief, Defendant did not conduct meaningful meetings with Plaintiff to discuss accommodation options.

131. Upon information and belief, Defendant did not ask questions about Plaintiff's functional limitations or alternative ways to meet his needs.

132. When Plaintiff responded to Defendant's proposed accommodations that the requirement to come to the office further from his home three days per week was onerous given the lack of assurance of pay or that he could maintain his current client base, Defendant ignored his responses.

133. Defendant presented the requirement to come to the office three days per week as a take-it-or-leave-it proposition.

134. Defendant did not revisit or re-evaluate Plaintiff's accommodation needs when job duties or training requirements changed.

135. When Defendant suddenly required Plaintiff to complete trainings that had previously been waived, Defendant did not engage in a discussion with Plaintiff about how to make the trainings accessible.

136. As a direct and proximate result of Defendant's failure to engage in the interactive process, Plaintiff has suffered damages including lost wages, emotional distress, and damage to his professional career.

**COUNT IV**
**RETALIATION IN VIOLATION OF 42 USCS § 12203**

137. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 136 as if fully set forth herein.

138. Plaintiff engaged in protected activity.

139. Plaintiff requested reasonable accommodations for his disability.

140. Requesting reasonable accommodations is protected activity under 42 USCS § 12203.

141. Plaintiff requested the ability to continue working from home with a previously approved voucher-signing accommodation.

142. Plaintiff requested accessible training materials or institutional support to complete required trainings.

143. Plaintiff opposed Defendant's discriminatory practices by advocating for his right to reasonable accommodations.

144. Defendant knew of Plaintiff's protected activity.

145. Plaintiff communicated his accommodation requests to Merakey and specifically to Frank Beatrice and Katrina McAfoos, employees acting within the course and scope of their employment.

146. Defendant was aware that Plaintiff was requesting accommodations for his disability.

147. Defendant took an adverse employment action against Plaintiff.

148. Defendant terminated Plaintiff's employment on March 31, 2025.

149. There is a causal connection between Plaintiff's protected activity and the adverse employment action.

150. Plaintiff was terminated shortly after his accommodation requests were denied.

151. Plaintiff was terminated shortly after Defendant required him to come to the office three days per week, a requirement imposed in response to his accommodation requests.

152. Defendant’s stated reason for termination was Plaintiff's failure to complete trainings.

153. This stated reason is pretextual.

154. Defendant had previously told Plaintiff not to worry about the trainings.

155. Defendant suddenly required Plaintiff to complete the trainings after he requested accommodations.

156. Defendant did not provide Plaintiff with a specific deadline for completing the trainings.

157. Defendant failed to provide accessible trainings or institutional support despite Plaintiff’s requests.

158. Defendant terminated Plaintiff for failing to complete trainings that were inaccessible to him and for which Defendant had failed to provide reasonable accommodations.

159. The temporal proximity between Plaintiff's accommodation requests and his termination supports a reasonable inference of retaliation.

160. Upon information and belief, similarly situated employees were not terminated for failing to complete trainings nor were they forced to come into the office without the expectation of pay or a continuity of care with their current client base.

161. As a direct and proximate result of Defendant Merakey Children’s Services’ unlawful retaliation, Plaintiff, Jeffrey Boudwin, has suffered damages including lost wages, emotional distress, humiliation, and damage to his professional reputation and career.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jeffrey Boudwin, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, Merakey Children's Services as follows:

**A.** Back pay against Defendant in an amount to be determined at trial, representing lost wages from March 31, 2025, to the date of judgment, pursuant to 42 USCS § 12117.

**B.** Front pay against Defendant in an amount to be determined at trial, representing future lost earnings, pursuant to 42 USCS § 12117.

**C.** Compensatory damages against Defendant in an amount to be determined at trial for emotional distress, humiliation, and other non-pecuniary harms, pursuant to 42 USCS § 12117 and 42 USCS § 1981a.

**D.** Punitive damages against Defendant in an amount to be determined at trial, pursuant to 42 USCS § 12117 and 42 USCS § 1981a.

**E.** Reinstatement to Plaintiff's former position or a substantially equivalent position with all benefits and seniority restored, or in the alternative, front pay, pursuant to 42 USCS § 12117.

**F.** Injunctive relief requiring Defendant to implement policies and procedures to prevent future discrimination, including providing reasonable accommodations to employees with disabilities, engaging in a meaningful interactive process regarding accommodation

requests, and training managers and supervisors on obligations under the Americans with Disabilities Act, pursuant to 42 USCS § 12117.

**G**. Reasonable attorney's fees and costs incurred in prosecuting this action, pursuant to 42 USCS § 12117.

**I.** Pre-judgment and post-judgment interest as permitted by law.

**J.** Such other relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff, Jeffrey Boudwin, demands a trial by jury on all issues so triable.

Respectfully Submitted,

THE PAGANO LAW FIRM, LLC

BY: /s/ Marlo Pagano-Kelleher__________
Marlo Pagano-Kelleher, Esquire (PA 84503)
201 King of Prussia Road
Suite 650
Radnor, Pennsylvania 19087
484-442-8750 – Tel.
484-442-8742 – Fax
*Attorney for Plaintiff, Jeffrey Boudwin*

Dated: October 7, 2026